## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NICHOLE L. HANSLEY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | C.A.No. 06-219-SLR |
| | ) | |
| PATRICK RYAN, et al., | ) | |
| | ) | |
| Respondents. | ) | |

## ANSWER

Pursuant to the Rules Governing § 2254 Actions, 28 U.S.C. foll. § 2254,

Respondents state the following in response to the petition for writ of habeas corpus:

On August 4, 2004, Nichole L. Hansley was arrested on the charges of robbery in

the first degree, possession of a deadly weapon during the commission of a felony, theft

and conspiracy in the second degree. Hansley remained incarcerated in default of bond

until March 3, 2005, when she pled guilty to felony theft, in exchange for which the

prosecution dismissed the balance of the charges. The Superior Court sentenced Hansley

to 2 years at level V, suspended after time served for 19 months at level III probation.

On June 23, 2005, Hansley was charged with violating the terms of her probation

and re-incarcerated. Hansley posted bail and was released on bond on June 23, 2005.

Hansley failed to appear at her next hearing date in Superior Court, and a capias was

issued for her arrest on July 13, 2005. On August 31, 2005, Hansley was arrested on the

outstanding capias. Hansley again posted bail and was released on bond on September 1,

2005. Hansley again failed to appear for her scheduled violation hearing, and Superior

Court issued another capias for her arrest on November 2, 2005. Hansley was arrested on

this capias on November 5, 2005 and was incarcerated in default of bond. On January 5, 2006, Superior Court found Hansley in violation of the terms of her probation and sentenced her to 2 years at level V, suspended immediately for 18 months at level IV, to be held at level V until space was available at level IV.

On March 9, 2006, Hansley was transferred from WCI to the women's work-release center. While at level IV, Hansley was again charged with violating the conditions of her probation on June 12, 2006. Hansley was then returned to WCI. On June 21, 2006, Superior Court found Hansley to have violated the conditions of her probation and sentenced her to 6 months at level V, suspended immediately for 1 year at level II probation. As of the date of this writing, Hansley remains under the custody of the Department of Correction at supervision level II probation. Hansley took no appeals from any of the above Superior Court orders.

Hansley has presented two claims for relief in her federal petition for writ of habeas corpus: that she has been held for more than 90 days at level V incarceration waiting for bed space at level IV work-release; and that she has not had a mental health evaluation while incarcerated. Hansley has not challenged the Superior Court's conviction or sentence order.

Hansley's claim must fail under 28 U.S.C. § 2254(a) as she has not alleged that she is in custody in violation of the Constitution or laws of the United States, but has merely challenged the conditions of her confinement. A petitioner seeking federal habeas relief may only challenge the fact or duration of confinement and not merely the rules, customs, and procedures affecting the conditions of his confinement. *See Preiser v. Rodriguez*, 411 U.S. 475, 499-500 (1973); *Graham v. Broglin*, 922 F.2d 379, 381 (7th Cir.

1991). *See also Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (inmate has no legitimate statutory or constitutional right in prison classification sufficient to invoke due process). This Court has at least three times rejected similar habeas petitions brought by inmates challenging the location of their incarceration. *See Heckinger v. Brewington-Carr*, Civ. A. No. 98-339 (D. Del. June 15, 1999) (Ex. A); *Zecca v. Williams*, 2000 WL 1092125 (D. Del. July 21, 2000) (Ex. B); *Oberly v. Kearney*, 2000 WL 1876439 (D. Del. Dec. 15, 2000) (Ex. C). In *Heckinger*, the petitioner claimed that he was entitled to be placed at work release, rather than full custodial incarceration. This Court rejected the claim, finding that a civil rights complaint was the proper vehicle to bring such a claim, not a petition for writ of habeas corpus. *Heckinger,* at 3.

This Court's decisions in *Zecca* and *Oberly* directly control the instant petition. The prisoner in *Zecca* did not challenge either his conviction or sentence, but rather alleged excessive incarceration at level V waiting for bed space at the boot camp diversion program. *Zecca,* at 2-3. Because Zecca did not allege that he had been held beyond the terms of his minimum mandatory sentence, this Court held that his habeas petition failed to allege a constitutional violation, and therefore failed to state a claim for relief under 28 U.S.C. § 2254. *Zecca,* at 3. Similarly in *Oberly* this Court stated, "The sentencing judge's statement that Oberly be transferred from Level V to Level IV or Level III is not a quantum change in the level of custody sufficient to make the issuance of a writ of habeas corpus the proper remedy for relief since, at a minimum, Oberly would still be subject to intensive supervision." *Oberly,* at *2. As Hansley seeks only a transfer from level V incarceration to level IV, her petition for writ of habeas corpus must likewise fail. Because Hansley's claim is not cognizable under section 2254, she is not

required to exhaust state remedies.  *See Tillett v. Freeman*, 868 F.2d 106, 108 (3d Cir. 1989).

As of July 6, 2006, Hansley has not been housed at WCI, and she is presently serving level II probation.  Hansley alleged that she was being illegally held at level V incarceration rather than level IV work-release.  (D.I. 1).  Nothing in Hansley's petition challenges the constitutionality of her underlying conviction.  Her claim is therefore moot.  *See Simmons v. Gilkey*, 1997 WL 89136 (N.D. Ill. Feb. 26, 1997) (Ex. D).  The Third Circuit has found only four exceptions to the dismissal of a claim when that claim fails to present an active controversy.  Those exceptions to the mootness doctrine are: (1) collateral consequences (implications of other rights as a result of a felony conviction) (*Carafas v. La Vellee*, 391 U.S. 234, 238-39 (1968)); (2) a wrong capable of repetition yet evading review; (3) a decision by the respondent to voluntarily stop an illegal practice while retaining the ability to resume such practice at any time; and (4) a properly certified class action.  *Chong v. District Director*, *INS*, 264 F.3d 378, 384 (3d Cir. 2001).

None of these four existing exceptions to the mootness doctrine apply to Hansley's habeas petition.  In reverse order, the instant petition does not purport to be a class action, nor has this Court certified it as such.  Thus, the fourth exception does not apply.  The State cannot re-incarcerate Hansley unless she commits a new crime or otherwise violates the terms of her probation.  The third exception likewise does not apply.

"Capable of repetition, yet evading review" is limited to situations where two elements exist: (1) the challenged action was in its duration too short to be fully litigated; and (2) there was a reasonable expectation that the complaining party would be subjected

to the same action again. *See Weinstein v. Bradford*, 423 U.S. 147, 149 (1975). The challenged action in this case was of too short a duration to be fully litigated in federal court prior to the Department of Correction's transfer of Hansley between custodial levels pursuant to the Superior Court sentence. A reasonable probability that Hansley will be subjected to the same action again, however, does not exist. First, for Hansley to prevail on this point, she would have to assure this Court that she would commit new crimes while on probation or otherwise violate the conditions of her probation. Second, even assuming that Hansley returns to a life of crime, there is no reason to believe that the Department of Correction would hold her at a higher supervision level than authorized by an order from a Delaware court. *See Simmons*, 1997 WL 89136, at *4, *citing Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1995) (no exceptional circumstances existed where a prisoner sought injunctive relief for alleged civil rights violations against certain prison officials for placement in a segregation unit after prisoner had been transferred to a different prison). Therefore, the issue that Hansley has raised in her habeas petition fails to satisfy the definition of "capable of repetition, yet evading review."

Finally, because Hansley did not challenge the underlying conviction within her habeas petition, but rather her place and level of custody and access to mental health treatment during incarceration, a decision of this Court on the merits of this petition would not have collateral consequences for Hansley. A habeas petitioner who is not in custody and has no other substantial stake in the litigation has no active controversy on which this Court can rule. *See United States ex rel. Dessus v. Commonwealth of Penn.*, 452 F.2d 557, 561 (3d Cir. 1971).

This Court has dismissed a habeas petition under substantially similar circumstances. *Weber v. Young*, Civ. A. No. 88-683 (D. Del. Aug. 27, 1990) (adopting Magistrate's Report and Recommendation of July 23, 1990) (Ex. E). The habeas petitioner in *Weber* filed his petition while incarcerated, but he was subsequently released on parole. Weber too did not challenge the constitutionality of his conviction or sentence, but instead sought release from confinement, in his case, on the basis of alleged miscalculation of good time credits. This Court dismissed the petition as moot, finding that there was no relief that it could grant him, he having been released from prison. *Weber* is indistinguishable from the facts of Hansley's petition, and the result should be the same: dismissal on the basis of mootness.

On the basis of the Superior Court docket, it appears that the transcript of Hansley's preliminary hearing has been prepared; the proceedings at Hansley's several sentencing and violation hearings were recorded, but no transcripts have been prepared. In the event that the Court deems production of any sentencing hearing necessary, Respondents anticipate that production of such transcripts would require at least 90 days from the date an order by this Court.

The petition for a writ of habeas corpus should accordingly be dismissed.

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

/s/_____
Gregory E. Smith, I.D. No. 3869
Deputy Attorney General
820 North French Street, 7th Floor
Carvel State Building
Wilmington, Delaware  19801
(302) 577-8398

Date: July 14, 2006

## CERTIFICATION OF SERVICE

The undersigned certifies that on July 14, 2006, he electronically filed the attached *Answer* with the Clerk of Court using CM/ECF.  The undersigned further certifies that on July 14,2006 that he mailed by United State Postal Service the document(s) to the following non-registered participant:

Nichole L. Hansley
225 B 8th Avenue
Wilmington, Delaware 19805

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

/s/_____
Gregory E. Smith, ID # 3869
Deputy Attorney General
820 North French Street, 7th Floor
Carvel State Building
Wilmington, Delaware 19801
(302) 577-8398

Westlaw.

2000 WL 1876439
2000 WL 1876439 (D.Del.)
(Cite as: 2000 WL 1876439 (D.Del.))

Page 1

Only the Westlaw citation is currently available.


United States District Court, D. Delaware.

Michael E. **OBERLY**, Petitioner,
v.
Richard **KEARNEY**, Warden, et Respondent,
Michael E. **OBERLY**, Petitioner,
v.
Rick **KEARNEY**, Warden, and M. Jane Brady,
Attorney General of the State of
Delaware, Respondents.

No. Civ.A.99-480-GMS.

Dec. 15, 2000.

Michael Oberly, Petitioner, pro se.

Thomas Brown, Department of Justice,
Wilmington, DE, for Respondent.

*MEMORANDUM AND ORDER*

SLEET, J.

*1 The petitioner, Michael E. Oberly ("Oberly"), is
presently incarcerated at the Sussex County
Correctional Institute ("SCCI") located in
Georgetown, Delaware. Respondents Rick Kearney
and M. Jane Brady are respectively the Warden of
SCCI and the Attorney General of the State of
Delaware. Oberly has filed a habeas petition with
this court challenging his continued confinement at
"Level V" and alleging that he is entitled to
placement at either "Level III" or "Level IV"
(D.I.1). [FN1] The petitioner has also filed the
following motions with the court:

> FN1. *See* 11 Del. C. § 4204(c)(3)-(5).
> Generally, Level III involves intensive
> supervision or community service, Level
> IV requires partial confinement under
> house arrest or to a halfway house, and
> Level V requires incarceration. Supervised

probation is only available for a Level II or
Level I sanction.

1. Two Motions to Amend Habeas Petition
(D.I.19, 20).
2. Motion for the Appointment of Counsel
(D.I.6).
3. Motion for Release Pending Review of
Decision (D.I.24).

Respondents have moved to dismiss the petition on
the ground that the petitioner has improperly
classified the action as a writ of habeas corpus when
in fact it should have been filed as a civil rights
claim under 42 U.S.C. § 1983. [FN2]

> FN2. 42 U.S.C. § 1983 states: "Every
> person who, under color of any statute,
> ordinance, regulation, custom, or usage, of
> any State or Territory or the District of
> Columbia, subjects, or causes to be
> subjected, any citizen of the United States
> or other person within the jurisdiction
> thereof to the deprivation of any rights,
> privileges, or immunities secured by the
> Constitution and laws, shall be liable to the
> party injured in an action at law, at equity
> or other proper proceeding for redress."

For the reasons set forth below, the court will
dismiss Oberly's petition. [FN3] Petitioner's
motions to amend and for appointment of counsel
will be dismissed as moot. His motion for release
pending review under Fed. R.App. P. 23(c) will be
dismissed as well since the rule is inapplicable to
this case and, in any event, is also moot. [FN4]

> FN3. If a prisoner seeks habeas corpus
> relief when he should have brought a civil
> rights action, the court has discretion to
> either grant the prisoner leave to file an
> appropriate pleading or to simply ignore
> the mislabeling and treat the petition as a
> civil rights complaint. *See Graham v.
> Broglin*, 922 F.2d 379, 381 (7th Cir.1991).
> Because of problems of extrapolation, the

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Ex. C

2000 WL 1876439
2000 WL 1876439 (D.Del.)
(Cite as: 2000 WL 1876439 (D.Del.))

Page 2

court declines to re-characterize Oberly's petition as a civil rights complaint.

FN4. Fed. R.App. P. 23(c) states "While a decision ordering the release of a prisoner is under review, the prisoner must--unless the court or judge rendering the decision, or the court of appeals, or the Supreme Court, or a judge or justice of either court orders otherwise--be released on personal recognizance, with or without surety." This rule governs the procedure of processing appeals to a United States court of appeals from the United States district court. Since Oberly's petition is not currently under appellate review, this court is not bound by the rule.

In June, 1997, Oberly pled guilty in the Superior Court of Delaware to driving under the influence, offensive touching, and failing to stop. Oberly did not appeal these convictions. On February 20, 1998, the Superior Court found him guilty of violating his probation and sentenced him to five years at Level V, with transfer to Level III or Level IV upon completion of a substance abuse treatment program. [FN5] Again, Oberly did not appeal the Superior Court's decision.

FN5. See Pet. Ex. A, Sentencing Tr. Feb. 20, 1998 at 11-14.

Since his incarceration, Oberly has completed the "New Hope" drug and alcohol treatment program, the "New Insights" program, the "12 Step Group of Chemically Dependent Anonymous" program, and the "Anger Management Group" program. [FN6] Oberly asserts that these certifications warrant his transfer to Level III or Level IV as per his sentence. It appears from his petition that Oberly claims he properly filed an application for a writ of habeas corpus under 28 U.S.C. § 2254 since he is challenging the duration of confinement rather than the conditions of his confinement.

FN6. Oberly attached Certificates of Completion for these programs to his second Motion to Amend.

An action under 42 U.S.C. § 1983 is the proper remedy for a state prisoner who wishes to mount a constitutional challenge to the conditions of his confinement, but not to the fact or length of his custody. See Preiser v. Rodriguez, 411 U.S. 475, 499 (1973); (reaffirming cases that establish § 1983 as proper remedy for state prisoner challenging conditions of prison life but not fact or length of custody); Wright v. Cuyler, 624 F.2d 455 (3rd Cir.1980) (stating that gaining admission to the home furlough program was a condition of a prisoner's confinement which can only be challenged by way of civil action); cf. Heck v. Humphrey, 512 U.S. 477, 486-89 (1994) (holding that claims challenging length of sentence or fact of conviction are only cognizable under § 1983 unless and until conviction or sentence is reversed, expunged, invalidated or impugned by grant of writ of habeas corpus).

*2 If the prisoner is seeking what can fairly be described as a quantum change in the level of custody--whether outright freedom, or freedom subject to the limited reporting and financial constraints of bond or parole or probation, or the run of the prison in contrast to the approximation to solitary confinement that is disciplinary segregation--then habeas corpus is his remedy. But, if he is seeking a different program or location or environment, then he is challenging the conditions rather than the fact of his confinement and his remedy is under civil rights law....

Graham, 922 F.2d at 381; see also Falcon v. United States Bureau of Prisons, 52 F.3d 137 (7th Cir.1995). In Graham, the court held that the appropriate vehicle to challenge the prison's denial of a work release application was by way of a civil rights action rather than a habeas petition. See Graham, 922 F.2d at 381. Even though a prisoner's total number of days actually spent behind bars can technically be reduced by the number of days during which he is out of prison on furloughs, it cannot be said that occasional short furloughs reduce the actual duration of his confinement. See Jamieson v. Robinson, 641 F.2d 138 (3d Cir.1981) (finding that prisoner who was denied acceptance to a work release program sought only to alter conditions of confinement and, therefore, did not sound chiefly in a habeas action); Wright, 624 F.2d at 458-59 (holding that failure of prisoner to gain admission to home furlough program was condition of confinement properly challenged under § 1983 rather than via writ of habeas corpus).

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

A claim that a prisoner is entitled to work release or home furlough is properly characterized as a civil action because, if successful, it merely changes the location where the sentence is to be served. *See Graham,* 922 F.2d at 381. Whether a prisoner works in a factory within the prison system or in the outside world is more a difference in location as opposed to a difference in the level of confinement. *See Falcon,* 52 F.3d at 137.

Oberly has not challenged the fact of his sentence or the length of time which he must serve. He is not claiming that he is entitled to immediate or speedier release from confinement. Nor would the relief he has requested diminish the overall length of his incarceration since Oberly is required to serve five years regardless of whether it is at Level V, Level IV, or Level III supervision. [FN7] The sentencing judge's statement that Oberly be transferred from Level V to Level IV or Level III is not a quantum change in the level of custody sufficient to make the issuance of a writ of habeas corpus the proper remedy for relief since, at minimum, Oberly would still be subject to intensive supervision. [FN8]

> FN7. Oberly's probation was revoked and the original sentence of five years was reinstated. Although the judge stated that Oberly's participation and completion of certain programs would result in a transfer to Level IV or Level III, he did not suggest that Oberly's sentence would be reduced or that he would be placed on supervised probation.

> FN8. The sentencing judge did not indicate whether Oberly should be moved to Level III or Level IV and Oberly does not claim he should be moved a specific Level. A move to Level IV would certainly not be a quantum change since Level IV requires partial confinement or house arrest. A move to Level III would similarly not be a quantum change since it requires intensive supervision or community service. The court need not decide whether Level II, which allows for supervised probation, constitutes a quantum change in the level of confinement since Oberly does not claim he should be moved to this level of supervision.

Because this petition is properly characterized as a 42 U.S.C. § 1983 action, the petitioner has failed to state a claim which provides a basis for federal habeas relief.

For the above reasons, IT IS HEREBY ORDERED that:

*3 1. Oberly's petition for a writ of habeas corpus (D.I.1) is DISMISSED without prejudice.

2. Oberly's motions to amend (D.I.19, 20) are DISMISSED as moot.

3. Oberly's motion for appointment of counsel (D.I.6) is DISMISSED as moot.

4. Oberly's motion for release pending review (D.I.24) is DISMISSED as moot.

5. Oberly is GRANTED leave to file a claim under 42 U.S.C. § 1983 based on allegations as stated in his petition for a writ of habeas corpus (D.I.1).

2000 WL 1876439 (D.Del.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

1997 WL 89136
1997 WL 89136 (N.D.Ill.)
(Cite as: 1997 WL 89136 (N.D.Ill.))

Page 1

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois.

Robert E. SIMMONS, Petitioner/Plaintiff,
v.
Charles R. GILKEY, Respondent/Defendant.

No. 96 C 6458.

Feb. 26, 1997.

### OPINION AND ORDER

NORGLE, District Judge.

*1 Before the court is Robert E. Simmons' ("Simmons") Petition for Writ of Habeas Corpus allegedly filed pursuant to 28 U.S.C. §§ 2241, 2243 , 2244 (1996). Simmons claims that Respondent Charles R. Gilkey ("Gilkey") violated 28 C.F.R. § 2.49 (1997) and Federal Rule of Criminal Procedure 32.1(a) (1996) by failing to conduct a probation revocation hearing within sixty days (local) or ninety days (institutional) of confining him based on the execution of a parole violator warrant. Simmons asserts that the untimely revocation hearing violates his Constitutional rights under Article I, Section 6 of the Constitution of the United States, as well as the Fourth, Fifth, Sixth, Eighth, Ninth, Thirteenth and Fourteenth Amendments. Gilkey asserts that Simmons' claims are moot. because the United States Parole Commission withdrew Simmons' parole violator warrant, released him from custody, and closed Simmons' case. The court agrees with Gilkey for the following reasons, and denies the Petition as moot.

### I. FACTS

On December 29, 1988, the United States District Court for the Western District of Wisconsin

sentenced Simmons to a six-year prison term for possession with intent to distribute cocaine. On September 28, 1993, the United States Parole Commission ("Parole Commission") paroled Simmons; Simmons' parole term ended on July 22, 1994.

Near the end of Simmons' parole term, on June 7, 1994, United States Probation Officer Cathy Williams informed the Parole Commission that Simmons failed to comply with several conditions of his parole, and that she was unaware of his whereabouts. On June 15, 1994, the Parole Commission issued a warrant application charging the following parole violations: (1) unauthorized use of narcotic and dangerous drugs based on three reports from November 1993, which charged Simmons with the submission of urine specimens testing positive for the unauthorized use of morphine; (2) failure to submit monthly supervision reports as required for the months from January through May 1994; (3) failure to report for random urine tests and scheduled counseling sessions, which were special conditions to Simmons' parole; and (4) failure to report to his Probation Officer as scheduled twice in 1994, coupled with his Probation Officer's inability to locate Simmons after a home contact.

On March 20, 1996, nearly two years after the warrant issued and parole expired, the Chicago Police Department arrested Simmons for possession of stolen goods. Five days later, on March 25, 1996, the United States Marshals Service learned that the Cook County Sheriff's Department had Simmons in custody and that the Parole Commission's violator warrant had been placed as a detainer. In a letter dated June 10, 1996, Simmons' Probation Officer informed the Parole Commission of Simmons' arrest and that the state complaint had been stricken with leave to reinstate in April 1996.

On July 2, 1996, the Marshals Service took Simmons into custody from the Cook County Sheriff's Department based on the parole violator warrant. The United States Probation Office did

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Ex. D

1997 WL 89136
1997 WL 89136 (N.D.Ill.)
(Cite as: 1997 WL 89136 (N.D.Ill.))

not learn that the Marshal's Service had Simmons in custody until August 9, 1996. On August 27, 1996, the Parole Office conducted a preliminary hearing in which Simmons requested a revocation hearing upon his return to a federal institution.

*2 In a summary report of the preliminary hearing, the Probation Office recommended to the Parole Commission a finding of probable cause on each charge. On September 30, 1996, the Parole Commission found probable cause existed for the alleged violations and ordered that Simmons be held pending an institutional revocation hearing. On October 1, 1996, the Parole Commission sent Simmons a letter informing him of the Parole Commission's finding.

Simmons' revocation hearing was scheduled on the hearing docket for the week of November 11, 1996, at the Metropolitan Corrections Center, Chicago, Illinois. However, on November 8, 1996, the Parole Commission withdrew the warrant, released Simmons, and closed the case. Gilkey admits that Simmons did not receive a timely revocation hearing.

Prior to the Parole Commission's November 8, 1996 action, Simmons filed the instant Petition. Again, in the Petition, Simmons alleges that Gilkey violated his rights under 28 C.F.R. § 2.49 and Federal Rule of Criminal Procedure 32.1. In addition, Simmons alleges that Gilkey held him in custody since July 2, 1996, and that, as of October 1, 1996, Gilkey has not given Simmons a revocation hearing nor has Gilkey scheduled a revocation hearing on the courts' docket pursuant to the requirements of 28 C.F.R. § 2.49. Simmons' prayer for relief includes a request for the court to show cause for the alleged violation and to quash the warrant application and warrant, suppressing all evidence used to determine probable cause. In addition, Simmons requests an immediate order of release and reinstatement of parole.

## II. DISCUSSION

Two issues arise: (1) whether this court generally has subject matter jurisdiction over Simmons' habeas corpus Petition and (2) whether Simmons' Petition falls within an exception to the mootness doctrine.

## A. JURISDICTION

28 U.S.C. § 2241(c)(3) provides that "[t]he writ of habeas corpus shall not extend to a prisoner unless--he is in custody...." Simmons did file his claim on October 3, 1996, while he was "in custody."

However, Simmons' Petition may nevertheless be moot, which would leave the court without subject matter jurisdiction. The notion of mootness, "derives from the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy." *D.S.A. v. Circuit Court* Branch 1, 942 F.2d 1143, 1146 n. 2 (7th Cir.1991) (quoting *Liner v. Jafco, Inc.,* 375 U.S. 301,306 n. 3 (1964)). So the court must now examine whether such a case or controversy exists.

Simmons requests the court to "quash the violator warrant and suppress any and all evidence used to form the basis and probable cause for the petitioner's conditions alleged to have been violated on parole." [Pet. at 2.] In addition, Simmons requests immediate release and reinstatement of his parole. Gilkey argues that Simmons' claim is moot because the Parole Commission withdrew the violator warrant, released Simmons, and closed the case thereby rendering Simmons' Petition moot.

*3 Two doctrines exist upon which Simmons may defeat Gilkey's assertion of mootness. The first doctrine asks whether the habeas corpus petitioner retains a substantial stake in the issue raised in his petition. *Carafas v. LaVallee,* 391 U.S. 234, 237, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968), *D.S.A.,* 942 F.2d at 1146, *Martin v. Luther,* 689 F.2d 109, 112 (7th Cir.1982). The second doctrine asks whether the wrong asserted in the habeas corpus petition is "capable of repetition, yet evading review." *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975); *Higgason v. Farley,* 83 F.3d 807, 811 (7th Cir.1995). Applying both doctrines, Simmons' Petition is moot.

## B. EXCEPTIONS TO MOOTNESS DOCTRINE
### 1. *Substantial Stake*

A habeas corpus petition is not moot so long as the petitioner retains a substantial stake in the outcome

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

of the proceedings. *Carafas,* 391 U.S. at 237, *Martin,* 689 F.2d at 112. "A petitioner, although released from custody, may continue to seek the writ if collateral consequences--lingering disabilities or burdens--are sufficient to give the petitioner 'a substantial stake in the judgment ... which survives the satisfaction of the sentences imposed on him.' " *D.S.A.,* 942 F.2d at 1146 (citing *Carafas,* 391 U.S. at 237). *Lane v. Williams,* 455 U.S. 624, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982), requires courts to focus on the relief sought in order to determine whether a release from custody renders a petition for habeas corpus moot or whether collateral consequences will exist despite a petitioner's release from custody. *D.S.A.,* 942 F.2d at 1147 (citing *Port v. Heard,* 764 F.2d 423, 428 (5th Cir.1985)). Disabilities and burdens which constitute "collateral consequences" include the inability to serve as an official or a labor union for a specified period of time, an inability to vote in any election, and the inability to serve as a juror. *Carafas,* 391 U.S. at 237. In addition, the inability to obtain a license to practice law and qualify for state elective offices constitute collateral consequences. D.S.A., 942 F.2d at 1146.

In *Lane,* the United States Supreme Court examined the issue of whether a trial court deprived defendants of due process of law when the court accepted the defendants' guilty pleas without advising the defendants that their pleas' included a mandatory parole requirement. *Lane,* 455 U.S. at 624. In *Lane,* since the habeas corpus petitioners attacked their sentences instead of seeking to plead anew, the court held that upon the expiration of their sentences, their claims were moot *Id.,* at 631. That is, after the expiration of their sentences, they no longer had a substantial stake in the outcome of the proceedings because they would not suffer any lingering collateral consequences from their expired sentences.

Here, as in *Lane,* Simmons requests relief that he has already obtained: the Parole Commission withdrew his parole violator warrant, released him, and closed his case. [FN1] The Parole Commission issued the parole violator warrant near the end of Simmons' parole term, but did not execute this warrant until approximately two years after the warrant issued. After Simmons filed his habeas corpus Petition, the Parole Commission

unconditionally withdrew the warrant, closed the case and released Simmons, with Simmons' parole almost two years expired.

> FN1. This court notes that, even if Simmons had received a hearing where the Parole Commission revoked his parole, it is unlikely that the court would find that he has a "substantial stake" in the habeas proceeding. In considering the effect of parole violations on a petitioner's record, the United States Supreme Court noted, in dicta, that any collateral consequences resulting from a parole violation finding would not be sufficient to give petitioners a substantial stake in a judgment which survives the satisfaction of their sentences. *Lane,* 455 U.S. at 632 n. 13. The court reasoned that "[t]he parole violations that remain a part of petitioners' records cannot affect a subsequent parole determination unless [the habeas corpus petitioners] again violate the law, are returned to prison, and become eligible for parole." *Id.* The petitioners control this situation through their future conduct and are required by law to prevent a future violation of the law. *Id.* In addition, the court indicated that such a violation would be only one factor taken into consideration and would not necessarily have any impact on later sentencing. *Id.* In the case at hand, however, it is unnecessary to determine whether the effects of a parole violation under federal law constitute a situation where the petitioner retains a "substantial stake" in the proceedings, since the Parole Commission withdrew Simmons' warrant and never found Simmons guilty of violating his parole.

*4 Simmons attacks only the lack of revocation hearing. As his parole has expired and the Parole Commission has withdrawn the warrant, Simmons will not suffer any "collateral consequences" from this statutory violation because the relief he requests already resulted from the closing of his case. Thus, like the Lane petitioners, Simmons no longer stands to gain anything through his Petition. Therefore, Simmons' request for immediate release is moot. In addition, Simmons' request for reinstatement of

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

his parole, which expired July 22, 1994, is denied as moot.

Simmons' request that this court quash the warrant and suppress evidence based thereon is also moot. Although the Parole Commission may withdraw a warrant and hold it in abeyance pending related state charges, the Parole Commission in the instant case did not indicate such a condition nor was Simmons' parole violator warrant based on pending state charges against him.

The court notes that the Parole Commission has the power to reissue parole violator warrants under certain circumstances. The Seventh Circuit recognizes that the Parole Commission has the power to withdraw a parole violator warrant and hold it in abeyance pending the outcome of *related* state criminal charges. *Thigpen v. United States Parole Comm'n,* 707 F.2d 973, 978 (7th Cir.1983) (emphasis added). *Contra Still v. United States Marshal,* 780 F.2d 848, 852 (10th Cir.1985). As in *Thigpen,* Simmons was arrested on state charges. However, the Parole Commission's power to withdraw a violator warrant and hold it abeyance does not apply to Simmons' warrant because the state charges were never made a part of Simmons' parole violator warrant. Thus, it is unlikely that the Parole Commission will reissue Simmons' warrant. Instead, the Parole Commission withdrew the warrant and closed Simmons' case. Therefore, since Simmons no longer is in jeopardy of having his parole revoked based on this warrant, his request to quash the warrant is moot. As there is no warrant, Simmons' request for the suppression of evidence upon which the warrant was based is also moot.

Gilkey's failure to provide a timely revocation hearing will not attach any "collateral consequences" to Simmons in his future. Any inability to vote, or serve as a juror or labor union official does not result from the absence of a revocation hearing. Simmons is no longer in custody, and because his parole terminated in July 1994, he will not again be picked up for a parole violation on the same warrant. In sum, the court finds that Simmons' Petition is moot because he no longer has a substantial stake in the outcome of the proceeding.

*2. Capable Of Repetition, Yet Evading Review*

Likewise, Simmons' case is moot under the "capable of repetition, yet evading review" doctrine. If the wrong alleged in Simmons' Petition is "capable of repetition, yet evading review," the case will not be deemed moot. "Capable of repetition, yet evading review" is limited to situations where two elements exist: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration; and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again. *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975). As the Seventh Circuit recognized, "the capable of repetition, yet evading review doctrine applies only in exceptional circumstances...." *Higgason v. Farley,* 83 F.3d 807, 811 (7th Cir.1995) (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 109, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). In *Higgason,* the Seventh Circuit found that no such exceptional circumstances existed where a prisoner sought injunctive relief for alleged civil rights violations against certain prison officials for placement in a segregation unit. *Id.* The *Higgason* court found that the prisoner was unable to show a reasonable expectation that he would be subjected to the same action because he was transferred to a different prison. *Id.* Thus, the Seventh Circuit denied the claims as moot.

*5 As in *Higgason,* no exceptional circumstances exist in Simmons' case. When the Parole Commission withdrew the warrant, released Simmons, and closed his case, the Parole Commission eliminated any reasonable expectation that Simmons will again be subjected to an untimely revocation hearing based on the same warrant. As such, his Petition is not "capable of repetition, yet evading review."

### III. CONCLUSION

The court finds that Simmons' Petition became moot upon the Parole Commission's decision to withdraw Simmons' warrant, release him, and close his case. Simmons' request for relief does not encompass any remedy that did not already result from the Parole Commission's order. Simmons no longer possesses a substantial stake in the case, and his case is not "capable of repetition, yet evading review." Thus, the court denies the Petition.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1997 WL 89136
1997 WL 89136 (N.D.Ill.)
**(Cite as: 1997 WL 89136 (N.D.Ill.))**

IT IS SO ORDERED.

1997 WL 89136 (N.D.Ill.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

PAUL E. WEBER,           )
                          )
       Petitioner,    )
                          )
      v.             )   Civil Action No. 88-683-JLL
                          )
HOWARD R. YOUNG, Warden, and )
CHARLES M. OBERLY, III,    )
Attorney General of the State )
of Delaware,            )
                          )
       Respondents.   )

---

Paul E. Weber, petitioner, pro se.

Loren C. Meyers, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, attorney for respondents.

---

## MAGISTRATE'S REPORT AND RECOMMENDATION

Dated:  July 23, 1990

Wilmington, Delaware

Ex. E

ROBINSON, U.S. Magistrate

Petitioner Paul E. Weber files this claim for habeas corpus relief under 28 U.S.C. §2254. Petitioner was convicted by a jury in Superior Court of first degree kidnapping, aggravated intimidation, intimidation, second degree burglary, second degree assault, menacing, third degree assault, and resisting arrest. On appeal, the Delaware Supreme Court reversed petitioner's conviction for first degree kidnapping for the entry of an acquittal and reversed petitioner's convictions for intimidation and aggravated intimidation, remanding for a new trial. The remaining convictions and sentences were affirmed. Weber v. State, 547 A.2d 948, 961 (Del.Supr. 1988). Following his conviction, petitioner was placed in the custody of the Delaware Department of Correction and sent to the Multi-Purpose Criminal Justice Facility in Wilmington, Delaware to serve a sentence of six and one half years. Weber v. State, No. 47, 1989 (Del.Supr. April 5, 1989). In November 1988, Weber petitioned for state habeas relief, alleging that he was entitled to discharge on conditional release because of good time credits[1] accumulated as a result of: 1) good behavior and "laboring with diligence" pursuant to 11 Del.C. §4382(4); 2) exemplary achievement in rehabilitation programs under 11 Del.C. §4384; and 3) working overtime at a prison job pursuant to 11 Del.C. §6533(f) and (g). (D.I. 13A, Notice of Petition dated November 28, 1988) After a

---

1. Good-time credits enable a convicted prisoner to hasten release from confinement for good behavior. See 11 Del.C. §4348.

2

hearing on the matter in which petitioner was represented by counsel, the Delaware Superior Court denied Weber's petition (D.I. 11, Ex. B; D.I. 13A, <u>Paul E. Weber Petition for Habeas Corpus</u>, No. 88M-DE-6-1-CA, slip op. (Del.Super. January 11, 1989)) and on appeal that decision was affirmed by the Delaware Supreme Court.[2] (D.I. 13A, <u>Weber v. Oberly</u>, No. 47, 1989 (Del.Supr. April 5, 1989)) On December 5, 1988, Weber filed this petition for federal habeas relief alleging that the respondents were improperly confining him as a result of their failure to award him with meritorious good time credit for the performance of overtime worked.    (D.I. 1) Having presented that claim to the Delaware Supreme Court, petitioner has met the exhaustion requirements of 28 U.S.C. §2254(b) and (c).[3]  See <u>Smith v. Digmon</u>, 434 U.S. 332 (1978).

Subsequent to the filing of this petition, Weber was released on parole pursuant to 11 Del.C. §4348 for having reached his short time release date on his sentence.    At the same time, petitioner also was apparently released on bail pending retrial on the charges of intimidation and aggravated intimidation. (D.I. 17, at ¶2)

---

2.   Although the original petition filed in Superior Court alleged improper denial of good time credits based on 11 Del.C. §§4382(4), 4384 and 6532, apparently counsel for petitioner pursued the claim only under §6532.  (D.I. 13A, letter dated December 30, 1988)  On appeal to the Delaware Supreme Court, petitioner asserted that he was entitled to additional good time credits under 11 Del.C. §6532.  (D.I. 31A, Appellant's Opening Brief dated February 21, 1989)

3.   Petitioner apparently filed identical petitions simultaneously in this Court and Delaware Superior Court.  (D.I. 1 and 13A) Nonetheless, it is apparent from the record that his state claims have been exhausted.

3

The petition is currently before the Court on memoranda supporting and opposing respondents' motion for summary judgment (D.I. 8, 8A, 13, 15, 17, 19, 20), petitioner's motion captioned "Leave to File Newly Discovered Evidence" (D.I. 14), and petitioner's motion for default judgment (D.I. 11). Respondents have urged two bases for dismissal of the petition.[4] First, respondents contend that because the petitioner has failed to comply with Delaware statutory and regulatory requirements regarding authorization and validation of good time credits, his claim is invalid. (D.I. 13) Second, regardless of the merits, respondents contend that the petitioner's claim is moot because of his subsequent release on parole. (D.I. 17) In response, petitioner has countered that his claim is not moot because his release on parole status satisfies 18 U.S.C. §§2241(c)(3) and 2254's "in custody" requirement. (D.I. 19) For the following reasons, I recommend dismissing the petition as moot.

---

4. Respondents argue that this petition should be dismissed based on insufficient service of process. (D.I. 13, Section III, ¶¶1-3) This claim is without merit. Pursuant to Fed.R.Civ.P. 4(h), an Order will issue contemporaneously with this Report and Recommendation requiring the Clerk of the Court to serve, pursuant to §2254 Rules 3(b) and 4, by certified mail a copy of the petition and the Order upon the above-named respondents. See J. Liebman, 1 Federal Habeas Corpus Practice & Procedure §11.8 (1988) (". . . [T]he more recently promulgated Habeas Rule 4 provides that the petitioner need not serve a copy of the petition on respondent or on the legal officer likely to be representing respondent (typically the state attorney general). Instead, it is the responsibility of the court to serve respondent and the state's attorney general by certified mail."); such amendment will not result in any prejudice to the substantial rights of respondents.

4

Although it is clear that petitioner's release on parole is a status included within the liberal meaning afforded to the term "custody" by the U.S. Supreme Court, it does not necessarily address respondents' argument that his claim is moot. Jones v. Cunningham, 371 U.S. 236 (1963). The doctrine of mootness is a similar but independent issue in habeas proceedings. See Malloy v. Purvis, 681 F.2d 736, 738 n.1 (11th Cir. 1982), cert. denied 460 U.S. 1071 (1983). See also L.W. Yackle, Postconviction Remedies, §49 (1981). The custody requirement owes its existence primarily to history and statute, while the mootness doctrine draws upon the "case or controversy" requirement in Article III of the U.S. Constitution. Id. If a favorable judgment on the original claim will no longer remove the harm done to the litigant, then any such judgment is advisory only and barred by Article III. Flast v. Cohen, 392 U.S. 83 (1968).

Instantly, Weber filed the petition while incarcerated and was subsequently released. He does not challenge the constitutionality of his judgment of conviction or judgment of sentence, but instead seeks release from confinement on the basis of an improper calculation of good time credits. Although Weber may be in a position to attack the validity of his conviction, see Carafas v. LaVallee, 391 U.S. 234 (1968), he seeks to reduce the term of his confinement, not to invalidate the fact of his confinement. (D.I. 1)

In short, petitioner seeks relief which cannot be granted because he has already been released. "A claim is not moot in the

5

sense that it fails the 'in custody' requirement. . . , but in the sense that, since [petitioner] has been released, there is simply no relief this Court can give him in a habeas proceeding." Schlang v. Heard, 691 F.2d 796, 799 n.6 (5th Cir. 1982), cert. denied 461 U.S. 951 (1983) (citations omitted). Where a petitioner challenges the accuracy of the calculation of his good time credits, and is subsequently released, such claims are deemed to be moot. See Bailey v. Southerland, 821 F.2d 277 (5th Cir. 1987); Hernandez v. Wainwright, 796 F.2d 389, 390 (11th Cir. 1986); Wainwright v. Rewis, 486 F.2d 306, 307 (5th Cir. 1973). Furthermore, as the defendants have pointed out, to the extent petitioner contends his challenge may affect the amount of time served on his pending charges, his claim is speculative. This assumes that in the event a retrial is held, petitioner will be convicted and sentenced to a term of imprisonment.

As a result of the foregoing discussion, I find it imprudent to address either the merits of the petitioner's claim regarding alleged denial of good time credit under 11 Del.C. §6532, his motion for default judgment, or his motion to conduct further discovery. Accordingly, I recommend granting respondents' motion for summary judgment and dismissing petitioner's application for habeas corpus relief.

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

PAUL E. WEBER,                          )
                                        )
                 Petitioner,            )
                                        )
        v.                              )       Civil Action No. 88-683-JLL
                                        )
HOWARD R. YOUNG, Warden, and            )
CHARLES M. OBERLY, III,                 )
Attorney General of the State           )
of Delaware,                            )
                                        )
                 Respondents.           )

### FINAL ORDER

The Court having (1) reviewed the U.S. Magistrate's Report and Recommendation which recommends that this habeas corpus action of a state prisoner be dismissed (Docket Item ["D.I."] 21), (2) noted that no timely objections have been filed to said report and recommendation, (3) given fresh consideration to the matter, and (4) made the Court's own determination on the basis of the Magistrate's record, it is

**ORDERED:**

1.   The Magistrate's Report, dated July 23, 1990 (D.I. 21), is hereby accepted and adopted by this Court.

2.   The petition for a writ of habeas corpus is hereby dismissed and the writ is hereby denied.

3.   No probable cause exists for an appeal.

Dated: **August 27, 1990.**

United States District Judge

Copies mailed and/or
delivered this date to:
  Mr. Paul E. Weber
  Loren C. Meyers, Esq.
  Hon. Sue L. Robinson
  J. R. McAllister, Jr., Clerk

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

RUSSELL HECKINGER,        )
                           )
       Petitioner,     )   Civil Action No. 98-339-LON
                           )
   v.                )
                           )
                           )
SHERESE BREWINGTON-CARR, et al.,  )
                           )
       Respondents.    )   O R D E R

1.    Petitioner Russell Heckinger has filed a petition for habeas relief pursuant to 28 U.S.C. § 2254. [Docket Item (D.I.) 1]. Respondents have filed an answer [D.I. 8].

2.    In May, 1993, Mr. Heckinger pled guilty in Delaware Superior Court to first degree robbery, first degree kidnaping, possession of a deadly weapon during commission of a felony, and two counts of third degree burglary. He was sentenced to 11 years imprisonment, suspended after six years for various levels of probation. Mr. Heckinger made no appeals concerning his conviction.

3.    In May, 1998, Mr. Heckinger filed an application for state habeas corpus relief in the Superior Court. The court denied the petition on May 27, 1998, and Mr. Heckinger did not appeal the court's decision.

4.    In Mr. Heckinger's pending habeas petition, he does not challenge the underlying convictions in his case; rather, he claims that he is entitled to placement in work release status

1.

*Ex. A*

and should not be incarcerated in level V.  Mr. Heckinger did not
present this issue to the Delaware Supreme Court because he never
appealed the denial of his state habeas petition.  Therefore,
this claim is procedurally defaulted under Delaware Supreme Court
Rule 6(a)(iii), which requires notice of appeals to be filed
within 30 days of entry of the court's order.

5.  .  In order to gain federal review of his procedurally
defaulted claim, petitioner must establish (1) cause for his
procedural default and resulting prejudice,  Coleman v. Thompson,
501 U.S. 722, 750 (1991); Caswell v. Ryan, 953 F.2d 853, 860-61
(3d Cir. 1992); or (2) that failure to review the claims will
"result in a fundamental miscarriage of justice."  Coleman, 501
U.S. at 750.  To demonstrate cause, petitioner must show that
"some objective factor external to the defense" precluded his
compliance with state procedural rules.  McCleskey v. Zant, 499
U.S. 467, 493 (1991).  Under this standard, cause can be
demonstrated by showing that the "factual or legal basis of a
claim was not reasonably available to counsel" or that government
interference rendered procedural compliance impracticable.
Murray v. Carrier, 477 U.S. 478, 488 (1986).  There is nothing
presented by petitioner, nor is there anything in the record to
demonstrate that the cause of the procedural default was external
to the petitioner.  Additionally, there is no miscarriage of
justice alleged by petitioner.  Accordingly, this claim is
denied.

6.  Furthermore, petitioner's claim regarding work release

is not proper in a habeas petition.  Petitioner's claim deals with the conditions of confinement, which is properly brought as a civil rights complaint:

> If the prisoner is seeking what can fairly be described as a quantum change in the level of custody -- whether outright freedom, or freedom subject to the limited reporting and financial constraints of bond or parole or probation, or the run of the prison in contrast to the approximation to solitary confinement that is disciplinary segregation -- then habeas corpus is his remedy.  But if he is seeking a different program or location or environment, then he is challenging the conditions rather than the fact of his confinement and his remedy is under civil rights law. . . .

Graham v. Broglin, 922 F.2d 379, 381 (7th Cir. 1991).  In Graham, the court went on to hold that the appropriate vehicle to challenge the prison's denial of a work release application was by way of a civil rights action.  Id.  See also, Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973); Falcon v. United States Bureau of Prisons, 52 F.3d 137 (7th Cir. 1995); Jamieson v. Robinson, 641 F.2d 138 (3d Cir. 1981).  A court, in its discretion, may change the style of a complaint from a habeas petition to a civil rights action, in order to avoid dismissal. In this matter, however, that is unnecessary, because petitioner has filed a civil rights action in this Court alleging the same facts as here.  See Heckinger v. Karr, 98-518-LON.  Therefore, Mr. Heckinger's habeas petition is denied.

3

NOW, THEREFORE, IT IS ORDERED that:

1.    Russell Heckinger's Petition under 28 U.S.C. § 2254 for Habeas Corpus Relief is DENIED.

2.    No probable cause exists for appeal.

_____ 6/15/99

Joseph J. Longobardi, D.J.

4

Westlaw.

2000 WL 1092125
2000 WL 1092125 (D.Del.)
(Cite as: 2000 WL 1092125 (D.Del.))

Page 1

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.

Rocco John ZECCA, Petitioner,
v.
Raphael WILLIAMS, Warden, Respondent.

No. Civ.A.99-524-SLR.

July 21, 2000.

Rocco John Zecca, Felton, Delaware, for Petitioner, pro se.

Thomas E. Brown, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware, for respondent.

MEMORANDUM OPINION

ROBINSON, J.

I. INTRODUCTION

*1 Currently before the court is petitioner Rocco John Zecca's application for habeas corpus relief filed pursuant to 28 U.S.C. § 2254. Petitioner was indicted in November 1997 in the Delaware Superior Court for trafficking in cocaine, possession with intent to deliver cocaine, maintaining a vehicle for keeping controlled substances, and second degree conspiracy. (D.I. 17 at No. 3) [FN1] In December 1998, petitioner pled guilty to trafficking in cocaine, and the state entered a *nolle prosequi* with respect to the remaining charges. (D.I. 17 at No. 18) The Superior Court sentenced petitioner to three years imprisonment, which it suspended upon petitioner's completion of a "boot camp" diversion program, and to two and one-half years of supervision. (D.I. 17 at No. 19; *see also* 11 Del. C. § 6705, 6712(d)(1)-(5)) The Superior Court also ordered petitioner held at "Level V" pending placement in the boot camp diversion program. (D.I. 17 at No. 19) In his application for habeas

corpus relief, petitioner raises four claims. Because none of these claims challenges the constitutionality of his underlying conviction and sentence, the court shall deny his application.

> FN1. The state court records consist only of the state court docket sheet. All references to the state court records in this opinion refer to this docket sheet.

II. DISCUSSION

The essence of petitioner's habeas corpus application is that he was held at Gander Hill prison for several months before being allowed to participate in the boot camp diversion program. It appears from the state court docket sheet that the Delaware Department of Correction ("DOC") initially prohibited petitioner from participating in the boot camp program because of a clerical error that led DOC officials to believe petitioner had pled guilty to the charges that the state, in fact, had not prosecuted. (D.I. 1, Ex. 6; D.I. 17 at No. 25) Consequently, petitioner remained at Gander Hill prison awaiting entry into the September boot camp "class." (D.I. 17 at No. 25) It appears from the record that petitioner has completed boot camp and has been released from custody. (D.I. 24 (May 5, 2000 letter to court from petitioner indicating change of address to Felton, Delaware)) Because petitioner remains under supervised release, however, his habeas corpus petition is not moot.

Although not moot, his petition does not state grounds for habeas corpus relief. To seek relief under the federal habeas corpus statute, a prisoner must allege that he is "in custody in violation of the Constitution or laws ... of the United States." 28 U.S.C. § 2254(a). Petitioner does not challenge the constitutionality of his guilty plea or his sentence. Instead, petitioner's application for habeas corpus relief rests primarily on his contention that he was incarcerated for a longer period of time than if he were promptly admitted to the boot camp program. There is no dispute, however, that he was not incarcerated beyond his three year minimum

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Ex. B

2000 WL 1092125                                                    Page 2
2000 WL 1092125 (D.Del.)
(Cite as: 2000 WL 1092125 (D.Del.))

mandatory sentence. Indeed, the Superior Court's sentencing order indicates that the Superior Court entered a judgment of conviction against petitioner under 16 Del. C. § 4753 (which carries a minimum mandatory three year sentence) and that, in lieu of this three year sentence, petitioner was "remanded to the custody of the [DOC] upon the condition that he shall complete the boot camp diversion program ." (D.I. 17 at No. 19) This was fully consistent with Delaware law. See 11 Del. C. § 6712(f) (providing that the Superior Court "shall have the authority to remand the offender to the custody of the Department of Correction at Accountability Level III, IV, or V until such offender is placed in a boot camp facility"). Accordingly, petitioner's habeas corpus application fails to allege a constitutional violation and, as such, does not state a claim for relief under 28 U.S.C. § 2254.

*2 Even if his application stated grounds for relief, petitioner has failed to exhaust his state law remedies. A habeas petitioner must exhaust those remedies still available in state court. 28 U.S.C. § 2254(b)(1)(A). State remedies are unexhausted if the petitioner "has the right under the law of the State to raise, by any available procedure, the question presented." Id. § 2254(c). Thus, a petitioner must raise before the state court of last resort the factual and legal premises of the claims for relief asserted in the § 2254 petition. See Chaussard v. Fulcomer, 816 F.2d 925 (3d Cir.1987) ; Gibson v. Scheidemantel, 805 F.2d 135, 138 (3d Cir.1986).

Here, petitioner has not raised his claims for relief to the Delaware Supreme Court. In fact, petitioner did not even appeal the Superior Court's denial of his motion for correction of sentence. (D .I. 17 at No. 23) Accordingly, petitioner has failed to exhaust his state remedies. It appears, however, that an attempt to raise these claims before the Delaware Supreme Court would be futile because 10 Del. C. § 147 requires him to file a notice of appeal within 30 days after the judgment's entry. Where the state remedies are no longer available, a habeas petitioner is excused from the exhaustion requirement. See Teague v. Lane, 489 U.S. 288, 298 (1989) (finding that because "collateral relief would be unavailable to petitioner," "fundamental fairness" requires that the exhaustion requirement be deemed fulfilled).

Notwithstanding this waiver of the exhaustion requirement, the court can only consider petitioner's grounds for relief if he can demonstrate cause for his failure to raise them to the Delaware Supreme Court and actual prejudice or "that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). To show cause, the petitioner must demonstrate that "something external to the petitioner, something that cannot fairly be attributed to him" impeded his efforts to comply with the State's procedural rules. Id. at 753. Such factors include interference by government officials, constitutionally ineffective assistance of counsel, or the unavailability of the factual or legal basis for a claim. See, e.g., McCleskey v. Zant, 499 U.S. 467, 494 (1991).

Petitioner's application is devoid of any showing of cause for his failure to raise his claims to the Delaware Supreme Court. Because petitioner has not established cause, the court need not inquire as to whether petitioner suffered prejudice. See Bailey v. Snyder, 855 F.Supp. 1392, 1402 (D.Del.1993), aff'd, 68 F.3d 736 (3d Cir.1995).

Alternatively, the court can consider otherwise procedurally barred claims if petitioner demonstrates that failure to do so would constitute a "miscarriage of justice." See Schlup v. Delo, 513 U.S. 298, 314-15 (1995). This exception applies only in "extraordinary cases." Id. at 321. As noted, petitioner was not incarcerated beyond the three year minimum mandatory sentence. Accordingly, his incarceration was not a miscarriage of justice.

III. CONCLUSION

*3 For the aforementioned reasons, the court shall deny petitioner's application for federal habeas corpus relief. An appropriate order shall issue.

2000 WL 1092125 (D.Del.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.